UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JAMES ALBERT WALDROP,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 5:12-CV-4085-MHH |
| | } |
| **CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,** | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff James Albert Waldrop brings this action pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act. Mr. Waldrop seeks review of the decision by the Commissioner of the Social Security Administration[1] denying his claims for a period of disability and supplemental security income ("SSI"). *See* 42 U.S.C. § 1383(c). After careful review, the Court affirms the Commissioner's decision.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer affecting the parties' substantial rights must be disregarded.").

## **STANDARD OF REVIEW**

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and her 'legal conclusions with close scrutiny.'" *Riggs v. Soc. Sec. Admin. Comm'r*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND

Mr. Waldrop alleges that his disability began on June 15, 2006. (Doc. 8-7, p. 7). Mr. Waldrop first applied for SSI on November 3, 2009. (Doc. 7-3, p. 44; Doc. 8-4, p. 2; Doc. 8-6, pp. 2-5). Six months later, the Social Security Administration ("SSA") denied Mr. Waldrop's application. (Doc. 8-5, pp. 4-10). Mr. Waldrop immediately requested a hearing before an Administrative Law Judge ("ALJ"). (Doc. 8-5, p. 11). The ALJ held a hearing on September 14, 2011. (Doc. 8-3, pp. 39-76).

At the time of his hearing, Mr. Waldrop was 49 years old. (Doc. 8-3, p. 44). During the hearing, the ALJ received evidence concerning Mr. Waldrop's educational background, his employment background, his medical conditions, his prescription regimen, and his daily activities. Mr. Waldrop explained to the ALJ that he has a high school education. *Id*. He previously has worked as a construction helper and a carpet installer. (Doc. 8-3, pp. 57, 70). He suffers from diabetes mellitus, degenerative disc disease, osteoarthritis of the thoracic and lumbar spine, chronic obstructive pulmonary disease, obesity, and hypertension, as well as possible peripheral neuropathy. (Doc. 8-3, pp. 26, 42). Mr. Waldrop rates his pain as an eight or nine on a scale of ten, but his pain levels fall when he takes his prescribed medications. (Doc. 8-3, p. 65). His prescribed medications include hydrocodone, Xanax, blood pressure medicine, diabetes medicine, and asthma

medicine. (Doc. 8-3, pp. 50). Mr. Waldrop spends most of an average day lying down. (Doc. 8-3, p. 48, 52). His mother shops for his groceries, pays his utility bills, and sometimes cooks meals for him. (Doc. 8-3, pp. 48, 62, 65-66). His sister does his laundry, cooks for him, and feeds his dog. (Doc. 8-3, pp. 63, 66).

In the decision that she issued on October 19, 2011, the ALJ concluded that Mr. Waldrop does not have an impairment or a combination of impairments listed in or medically equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 8-3, p. 27). In her nine-page decision, the ALJ described the "five-step sequential evaluation process for determining whether an individual is disabled." (Doc. 8-3, p. 24). She evaluated each step in order.

First, the ALJ found that Mr. Waldrop has not "engaged in substantial gainful activity…since November 3, 2009." (Doc. 8-3, p. 26). Medical treatment notes indicate that Mr. Waldrop may have worked briefly in November 2009 and may have engaged in work-like activity in September 2010. (Doc. 8-8, pp. 29-30, 56-57). In addition, the ALJ found that Mr. Waldrop had "the following severe impairments: degenerative disc disease/osteoarthritis of the thoracic and lumbar spine, type II diabetes mellitus, hypertension, and obesity." (Doc. 8-3, p. 26). The judge concluded that "the [listed] impairments result in more than minimal functional limitations. They therefore constitute 'severe' impairments." (Doc. 8-3, p. 26).

The ALJ found that Mr. Waldrop "can frequently lift and/or carry up to 10 pounds. He can stand and/or walk…for up to 2 hours during an 8 hour workday. He can sit…for up to 6 hours during an 8 hour workday. [Mr. Waldrop] can frequently climb ramps and stairs. He can frequently balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to extreme cold and all exposure to industrial hazards." (Doc. 8-3, p. 27).

Moreover, the ALJ took into consideration medical reports from Dr. Harrell Cox and Dr. Christopher Green, physicians with Highland Medical Center who reviewed diagnostic images of Mr. Waldrop's lumbar spine. Dr. Cox's report, dated January 18, 2010, notes "moderate compression and anterior wedging at T12 with old mild compression suspected at T1, 11, and L1…Advanced degenerative disc disease predominates at T10-11, 11-12, and L4-5 with moderately severe degeneration at L2-3 and 3-4 and moderate degeneration at the thoracolumbar junction, L1-2, and L5-S1." (Doc. 8-8, p. 41). Dr. Green's report, dated April 13, 2010, describes, "[m]ild anterior wedge deformity of T10, T11, and T12…Moderate anterior marginal osteophyte formation is seen at T10-11, T11-12, L2-3, and L4-5. Moderate facet arthropathy is noted in the lower lumbar spine." (Doc. 8-8, p. 40).

The ALJ also took into account an examination performed by Dr. Younus Ismail. Dr. Ismail diagnosed Mr. Waldrop with chronic back pain, degenerative

disc disease of the spine, possible peripheral neuropathy, hypertension, non-insulin dependent diabetes mellitus, chronic obstructive pulmonary disease, insomnia, and decreased hearing. (Doc. 8-8, p. 34). Dr. Ismail stated that Mr. Waldrop "[h]as some moderate degree of limitation [in his] dorsolumbar spine." (Doc. 8-8, p. 34).

      The ALJ determined that Mr. Waldrop's statements about the intensity, persistence, and limiting effects of his impairments were "credible to the extent he would experience back pain with heavy lifting or prolonged periods of walking and/or standing." (Doc. 8-3, p. 28). The ALJ stated that Mr. Waldrop's allegations that he is incapable of all work activity were not credible due to "significant inconsistencies in the record as a whole." (Doc. 8-3, pp. 28-29). For example, the ALJ remarked that, despite Mr. Waldrop's testimony that he had "no grip," could not straighten some of his fingers, and struggled to do tasks such as writing, holding a drink, or operating a standard doorknob, medical treatment notes indicated that Mr. Waldrop had "5/5 strength of all extremities…[and] 5/5 handgrip." (Doc. 8-3, pp. 29, 56; Doc. 8-8, p. 33). The ALJ further noted that "[t]he course of medical treatment and the use of medication in this case are not consistent with disabling levels of pain." (Doc. 8-3, p. 29). The ALJ highlighted treatment records that indicated "significant improvement" in Mr. Waldrop's pain level when using medication. (Doc. 8-3, p. 29; Doc. 8-9, pp. 29-39). Finally, the ALJ commented on Mr. Waldrop's testimony concerning employment income

which Mr. Waldrop did not report.  (Doc. 8-3, pp. 30, 57).  The medical records combined with Mr. Waldrop's testimony led the ALJ to question Mr. Waldrop's credibility regarding the intensity, persistence, or limiting effects of his impairments.  Thus, the ALJ found Mr. Waldrop to be credible only "to the extent he would experience back pain with heavy lifting or prolonged periods of walking and/or standing."  (Doc. 8-3, p. 28).  Based on these findings, the ALJ concluded that Mr. Waldrop retained the residual functional capacity ("RFC") to perform work-related activities at the sedentary level.  (Doc. 8-3, p. 30).

The ALJ found that Mr. Waldrop is unable to perform any past relevant work. (Doc. 8-3, pp. 30-31).  However, based upon Mr. Waldrop's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Mr. Waldrop can perform, including: dispatcher, surveillance monitor, and telephone quotation clerk.  (Doc. 8-3, pp. 31, 73-74).  Consequently, the ALJ concluded that Mr. Waldrop was not disabled, as that term is defined in the Act, during the time frame that the ALJ examined.  (Doc. 8-3, p. 32).

On October 10, 2012, the Appeals Council declined Mr. Waldrop's request for review of the ALJ's decision.  (Doc. 8-3, pp. 2-4).  Mr. Waldrop subsequently filed this action for judicial review pursuant to § 1631(c) of the Act.

## ANALYSIS

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013). "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* at 930 (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

I. <u>The ALJ did not fail to evaluate all of the medical evidence or improperly substitute her judgment for that of medical experts</u>

Mr. Waldrop argues that the ALJ failed to evaluate all of the objective medical evidence of record in making her RFC determination. Specifically, Mr. Waldrop contends that the ALJ's summation of the evidence constituted a substitution of the ALJ's judgment for that of the medical and vocational experts and that the ALJ's brief discussion of certain exhibits is a "gross misstatement of the objective medical evidence." These contentions are without merit.

The ALJ's opinion states, "[a]bnormal findings on clinical examination were generally limited to a moderate degree of limitation in the dorsolumbar spine (Exhibit 3F). This is supported by diagnostic imaging showing degenerative disc disease and osteoarthritis of the thoracic and lumbar spine (Exhibits 4F, 5F, and 8F)." (Doc. 8-3, p. 29). Contrary to Mr. Waldrop's assertions, the objective medical evidence supports the ALJ's summary of the record. Exhibit 3F, a report of a medical examination performed on Mr. Waldrop by Dr. Ismail, specifically states that Mr. Waldrop "[h]as some moderate degree of limitation at dorsolumbar spine." (Doc. 8-8, p. 34). Rather than substituting her judgment for that of the medical expert, the ALJ relied upon Dr. Ismail's description of Mr. Waldrop's condition in her decision. Although the ALJ acknowledges Exhibit 5F only in passing, there is no "rigid requirement" that the ALJ specifically refer to every piece of evidence if the decision allows the Court to conclude that the ALJ

9

considered the medical condition as a whole. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ's decision, viewed in its entirety, persuades the Court that the ALJ considered the entire record. Moreover, a finding of disability hinges on the functional limitations that accompany a condition, not the existence of the condition itself. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). Therefore, it was within the ALJ's province, when considering the entire record, to determine that Mr. Waldrop's medical condition had a "moderate degree of limitation" in regards to Mr. Waldrop's ability to work.

II.   The ALJ properly found Mr. Waldrop's credibility lacking

Alternatively, Mr. Waldrop criticizes the ALJ's determination that his credibility does not satisfy the requirements of the Social Security Laws and Regulations. Social Security Ruling 96-7p states, in part:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the…decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."…[T]he decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to

any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

In determining whether a claimant is credible, the Commissioner must consider the claimant's symptoms, including pain, and the extent to which the symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. 20 C.F.R. § 416.929(a).

Here, the ALJ did more than make a conclusory statement regarding Mr. Waldrop's credibility. The ALJ drew attention to three instances that implicate Mr. Waldrop's credibility. First, the ALJ took notice of Mr. Waldrop's unreported income. Second, the ALJ contrasted Mr. Waldrop's testimony that he had trouble gripping objects and would have difficulty holding an item such as a can of soda or a standard doorknob with medical reports that described Mr. Waldrop's strength in his extremities and grip both as "5/5." Lastly, the ALJ noted that Mr. Waldrop's course of medical treatment and use of medication was inconsistent with disabling levels of pain. An individual's claim that he is in pain is not conclusive unless medical evidence supports the claim. 42 U.S.C. § 423(d)(5)(A). Mr. Waldrop's intake forms show a self-reported decrease in pain with medication. (Doc. 8-9, pp. 29-39). *See McSwain v. Bowen*, 814 F.2d 617, 620 n. 1 (noting that ALJ did not err by failing to include conditions in his RFC analysis that were substantially controlled by medicine). Discrepancies between Mr. Waldrop's testimony and

other items in the record provide substantial evidence undermining his credibility. The ALJ did not err in her determination.

### III. The ALJ properly found that Mr. Waldrop could perform other work

Mr. Waldrop's final argument is that the ALJ relied on the VE's inaccurate characterization of Mr. Waldrop's skills. Mr. Waldrop claims that the VE improperly defined "life skills" as "transferrable skills." The Court disagrees.

The Eleventh Circuit has considered this issue. In *Zimmer v. Comm'r of Soc. Sec.*, the VE testified that the claimant, who had previously worked as a fine dining waiter, had developed the skills of money handling and customer service. The claimant argued that money handling and customer service skills were more akin to life skills than transferrable work skills. *Zimmer v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 819, 820-21 (11th Cir. 2006). The Court stated, "[u]nless [the claimant] can show that the VE was wrong in her assessment of [the claimant's] skills, the VE's assessment is deemed correct." *Id*. at 821.

The SSA defines a "skill" as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)." S.S.R. 82-41. "[S]killed jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 416.968. "Semi-skilled jobs may require

alertness and close attention to watching machine processes … [or] where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

The VE testified that based on his prior work in construction and carpet installation, Mr. Waldrop had acquired the following transferrable skills: time management, active listening, service orientation, critical thinking, and speaking. (Doc. 8-3, pp. 71-72). Just as the Eleventh Circuit found that money handling and customer service fit the SSA's definition of skills, so too do the skills that the VE attributed to Mr. Waldrop.[2]

Mr. Waldrop notes that after his hearing, he turned 50 years old. If his current age were relevant to the Court's analysis and if the Court deemed the VE's characterization of Mr. Waldrop's skills incorrect, Mr. Waldrop would qualify as disabled under the Medical Vocational Guidelines. *See* 20 C.F.R. part 404, subpt. 2, app. 2 ("the Grids") (stating that a 50-year-old individual, limited to a sedentary exertional level and without any transferrable skills, is disabled). However, the time frame that the ALJ reviewed ran from November 3, 2009, the date of the application (when Mr. Waldrop was 47), to September 14, 2011, the date of the hearing (when Mr. Waldrop was 49). Under the Grid rule applicable to Mr.

---

[2] Assuming, arguendo, that Mr. Waldrop had no transferrable skills, he still could work as either a surveillance officer or a telephone clerk, given his RFC. Mr. Waldrop does not assert that an individual with transferrable skills is precluded from performing unskilled work.

Waldrop, a 45- to 49-year-old individual who lacks transferrable skills is not disabled if limited to a sedentary exertion level. 20 C.F.R. part 404, subpt. 2, app. 2 § 201.21. A similarly situated individual *with* transferrable skills likewise is not disabled. *See* 20 C.F.R. part 404, subpt. 2, app. 2 § 201.22. Thus, the ALJ was not required to find Mr. Waldrop disabled.

## CONCLUSION

For the reasons outlined above, the Court concludes that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. Accordingly, the Court AFFIRMS the decision of the Commissioner. The Court will enter a separate order consistent with this memorandum of opinion.

**DONE** and **ORDERED** this 24th day of April, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE